UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SHAWN PAUL GROSSMAN #621120,

    Plaintiff,                                      Hon. Phillip J. Green

v.                                                     Case No. 1:23-cv-1204

P.C. ALLEN, et al.,

    Defendants.
_____/

**OPINION**

This matter is before the Court on Defendants' Motion for Summary Judgment. (ECF No. 34). The parties have consented to proceed in this Court for all further proceedings, including trial and an order of final judgment. 28 U.S.C. § 636(c)(1). For the reasons discussed herein, Defendants' motion will be granted and this action terminated.

**BACKGROUND**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Macomb Correctional Facility (MRF). The events giving rise to this action, however, occurred at the Carson City Correctional Facility (DRF). Plaintiff initiated this lawsuit against eight individuals employed at DRF. (ECF No. 1). A majority of Plaintiff's claims were dismissed on screening except for his Eighth Amendment claims against Defendants. (ECF No. 9-10). Defendants Blair, Hummel, Rewerts, and Walraft then moved for summary judgment on exhaustion grounds, which

the Court granted, dismissing them from the action. (ECF No. 29-30). At this juncture, the only claims remaining in this matter are Plaintiff's Eighth Amendment claims against Defendants Allen, Dill, Fidler, and Ferguson.

In his complaint, Plaintiff alleges the following. (ECF No. 1). On February 2, 2022, Defendants Allen and Fidler "popped" a water bag while searching a neighboring cell. (ECF No. 1, PageID.4). The water leaked into Plaintiff's cell where his fan was plugged into an extension cord on the floor, causing an "electric shortage" and "burning out the power." (*Id.*). Plaintiff stated that his "fan was destroyed." (ECF No. 1, PageID.11). The lights flickered for "a couple hours" then shut off completely. (ECF No. 1, PageID.4). At that point, Plaintiff and his cellmate had "no lights" and "no power." (*Id.*).

Plaintiff asserts that his cell did not have power until a month later on March 2, 2022, despite repeated requests to Defendants for assistance throughout that time. (*Id.*). Specifically, Plaintiff "told" and "showed" Defendant Dill "what was going on" "when [Plaintiff] first discovered it." (*Id.*). Plaintiff asked Defendants Dill and Allen "multiple times every week to help." (*Id.*). Plaintiff wrote Defendant Ferguson who worked in maintenance, "asking what[']s going on, with no response." (ECF No. 1, PageID.5). Plaintiff asserts that Defendant Allen told him that, because Plaintiff was in protective custody, "there were no other rooms available." (ECF No. 1, PageID.12). Plaintiff states that he wrote a grievance on February 14, 2022, about the power outage in his cell. (ECF No. 1, PageID.13). Plaintiff wrote a second grievance, "telling them

of what was going on," and "asked to be moved numerous times with no help." (ECF No. 1, PageID.5). Plaintiff states that the "plug was sizzling and popping and burning the whole time" and that he "could smell wires burning." In one instance, "the plug caught fire by [Plaintiff's] feet." (*Id*.). Plaintiff asserted that "[n]o one would help [them] [be]cause [they] were in protective custody." (*Id*.). Defendant Ferguson "fix[ed] the power" on March 2, 2022. (ECF No. 1, PageID.13). Plaintiff "could not see" to "use [the] bathroom," "watch television," or "do [his] law work." (ECF No. 1, PageID.13-14). Plaintiff "feared for [his] safety being in the room." (ECF No. 1, PageID.5).

Plaintiff asserts that Defendants were deliberately indifferent to the conditions of his confinement in violation of his Eighth Amendment right to be free from cruel and unusual punishment. The remaining Defendants now move for summary judgment. Defendants also assert that they are entitled to qualified immunity to the extent Plaintiff has sued them in their individual capacities. Plaintiff has also moved for summary judgment. Plaintiff has responded to the motion. The Court finds that oral argument is unnecessary. *See* W.D. MICH. LCIVR 7.2(d).

## SUMMARY JUDGMENT STANDARD

Summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Whether a fact is "material" depends on "whether its resolution might affect the outcome of the case." *Harden v. Hillman*, 993 F.3d 465, 474 (6th Cir. 2021).

A party moving for summary judgment can satisfy its burden by demonstrating that the non-moving party, "having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case." *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). Once the moving party makes this showing, the non-moving party "must identify specific facts that can be established by admissible evidence, which demonstrate a genuine issue for trial." *Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006). The existence of a mere "scintilla of evidence" in support of the non-moving party's position, however, is insufficient. *Daniels v. Woodside*, 396 F.3d 730, 734-35 (6th Cir. 2005).

While the Court must view the evidence in the light most favorable to the non-moving party, that party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Amini*, 440 F.3d at 357. The non-moving party "may not rest upon [his] mere allegations," but must instead present "significant probative evidence," establishing that "there is a genuine issue for trial." *Pack v. Damon Corp.*, 434 F.3d 810, 813-14 (6th Cir. 2006). Likewise, the non-moving party cannot merely "recite the incantation, 'credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof." *Fogerty v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348, 353-54 (6th Cir. 2004).

Accordingly, summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Daniels*, 396 F.3d

at 735.  Stated differently, the "ultimate question is whether the evidence presents a sufficient factual disagreement to require submission of the case to the jury, or whether the evidence is so one-sided that the moving parties should prevail as a matter of law." *Harden*, 993 F.3d at 474.

While a moving party without the burden of proof need only show that the opponent cannot sustain his burden at trial, a moving party with the burden of proof faces a "substantially higher hurdle."  *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002). Where the moving party has the burden, "his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986).  Accordingly, summary judgment in favor of the party with the burden of proof "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

## ANALYSIS

Defendants contend that they are entitled to qualified immunity.  The doctrine of qualified immunity recognizes that government officials must be able to carry out their duties without fear of litigation.  See *Davis v. Scherer*, 468 U.S. 183, 195 (1984).  They can do so only if they reasonably can anticipate when their conduct may give rise to liability for damages and if unjustified lawsuits are quickly terminated.  *Id.*  The analysis entails a two-step inquiry.  *Martin v. City of Broadview Heights*, 712 F.3d 951, 957 (6th Cir. 2013).  First, the Court must "determine if the facts alleged make out a

violation of a constitutional right." *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)). Second, the Court asks if the right at issue was " 'clearly established' when the event occurred such that a reasonable officer would have known that his conduct violated it." *Id.* (citing *Pearson*, 555 U.S. at 232). A court may address these steps in any order. *Id.* (citing *Pearson*, 555 U.S. at 236). A government official is entitled to qualified immunity if either step of the analysis is not satisfied. *See Citizens in Charge, Inc. v. Husted*, 810 F.3d 437, 440 (6th Cir. 2016).

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. U.S. CONST. amend. VIII. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. "Routine discomfort is 'part of the penalty

that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479-80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims). The deliberate-indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[ ] of and disregard[ ] an excessive risk to inmate health or safety." *Id.* at 837. "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842. "It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Id.* at 836. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.

In support of their motion for summary judgment, Defendants have submitted evidence regarding the events in question. (ECF No. 35-2, PageID.217-18; ECF No. 35-3, PageID.220-33; ECF No. 35-4, PageID.235-36; ECF No. 35-5, PageID.238-39; ECF No. 35-6, PageID.241-43; ECF No. 35-7, PageID.248-49; ECF No. 40-1, PageID.284-85). Comprising this evidence, the following is asserted.

Plaintiff testified at his deposition that he returned from being in the yard and observed "water all in the cell" with "no power." (ECF No. 35-3, PageID. 226). He testified that turning his fan on caused the lights in his cell to flicker. (ECF No. 35-3, PageID.226-27). The outlet "sizzle[ed]," "popp[ed]," and "smok[ed]." (ECF No. 35-3, PageID.230). Plaintiff testified that the smoke from the outlet "irritat[ed] [his] throat," causing him to cough and gag but that "it wasn't debilitating" but instead "aggravating." (ECF No. 35-3, PageID.230-31). Plaintiff testified that Defendants Allen and Dill told Plaintiff that they would "put a work order [in]" "every time" Plaintiff raised the situation to them and that Defendant Ferguson told Plaintiff that he did not receive a work order. (ECF No. 35-3, PageID.232-33).

Defendant Allen averred that he "put in a work order" to repair Plaintiff's electrical issues as he was not trained or authorized to do electrical repairs at DRF. (ECF No. 35-2, PageID.217). Further, if Plaintiff had any "issues with his lights in his cell," the "issue would have been remedied within just a few days" because "it would be a security concern for officers to [not] see into cells during rounds." (*Id.*). "The only issue" Defendant Allen "remember[ed] taking approximately one month to remedy was

-8-

the electrical outlet in [Plaintiff's] cell." (*Id.*). Defendant Allen averred that "Plaintiff Grossman was not at risk for serious harm based upon the condition of his cell or electrical issues" and that, "during February or March 2022," Plaintiff was not "denied food, medical care, or sanitation." (ECF No. 35-2, PageID.217-18).

Defendant Fidler averred that Plaintiff "always had access to food, medical care, and sanitation" and that he "was never aware of any risks to serious harm [Plaintiff] was exposed to in February or March 2022." (ECF No. 40-1, PageID.284-85).

Defendant Ferguson averred that he was a "maintenance mechanic" at DRF in 2022 and that he did not become an electrician at DRF until 2023. (ECF No. 35-6, PageID.241). Defendant Ferguson averred that a work order was placed "for an outlet that was not working" in Cell #1200-79 on February 7, 2022, which was assigned to Heath Bigelow, an electrician at DRF in 2022, whom Defendant Ferguson "had no authority over . . . to control what assignments he completed or how." (ECF No. 35-6, PageID.241). According to Defendant Ferguson, there was not "a work order submitted for the lights in [Cell] 1200-79 in February or March of 2022." (ECF No. 35-6, PageID.242).

As an electrician at DRF at the time of his affidavit in 2024 (ECF No. 35-6, PageID.241), Defendant Ferguson stated that

> The lights and electrical outlets in [Cell] 1200-79 are on different circuit breakers. It would not be possible for the electrical outlet in 1200-79, or any device plugged into that outlet, to control the lights in the cell. The outlet in 1200-79 was a ground fault circuit interrupter outlet which means the outlet is expected to stop the flow of electricity through the outlet without tripping the circuit breaker. The lights in 1200-79 are on an

> electrical circuit that is shared with the lights in other cells. The lights are not wired with a ground fault circuit interrupter which means that if the lights were to short out, the lights would go out in at least four other cells including 1200-79. If 1200-79 was flooded, the water levels in the cell would need to be over three feet deep to impact the lights as there are no wires lower than the light switch on the wall. In my role as an electrician with MDOC, I have never seen the electrical outlet in the cell have an impact on the lights in the cell. If the outlet in the cell were to improperly complete the electrical circuit ("short"), the outlet would cut off power to the receptacles. If the outlet were to fail to cut off power to the receptacles after it completes the circuit, the outlet would then cause the circuit breaker to cut off power and numerous other cells would lose power to their outlets in addition to 1200-79.

(ECF No. 35-6, PageID.242). Defendant Ferguson further averred that even "[i]f the outlet and lights were not working in a cell," it "would not cause a safety concern" or place anyone "at risk of serious harm" because "[t]he electrical outlet in [Cell] 1200-79 is approximately 40 inches above the floor" and "[t]he light switch in [Cell] 1200-79 is approximately 48 inches above the floor." (ECF No. 35-6, PageID.242-43).

Bigelow averred that the February 7, 2022, "work order for Cell 1200-79 was focused on the electrical outlet, not the lights" and that "there was never an issue with the lights in [Cell] 1200-79 in February or March 2022." (ECF No. 35-5, PageID.238).

Defendants also submitted as evidence a work order for Cell 1200-79 dated February 7, 2022. (ECF No. 35-4, PageID.235; ECF No. 35-6, PageID.245). The work order is consistent with Defendants' proffered affidavits and states that, in the 1200 Building, the "[e]lectrical outlet in cell 79 is not working." (*Id*.). It shows a completion date of March 10, 2022. (*Id*.).

In response to Defendant's motion, Plaintiff submitted, *inter alia*, handwritten annotations of Bigelow's and Defendant Ferguson's affidavits (ECF No. 42-3, PageID.307-09), stating that "Mr. Bigelow never fixed my wall outlet plug. It was Mr. Ferguson." (ECF No. 42-3, PageID.308).

As is well recognized, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

Plaintiff fails to establish that he was objectively at risk for serious harm. Even if Plaintiff's power shut off, the record does not support that it was for any extended period of time. Indeed, the sole work order in evidence merely mentions an electrical outlet, not power issues, and Plaintiff fails to provide or allege the existence of other work orders regarding a lack of electricity to his cell entirely. (ECF No. 35-4, PageID.235).

Regarding the electrical outlet, Plaintiff testified that it "sizzle[ed]," "popp[ed]," and "smok[ed]." (ECF No. 35-3, PageID.230). However, Defendant Ferguson averred that if the outlet were to "short," "the outlet would cut off power to the receptacles" (ECF No. 35-6, PageID.242). If the outlet cut off power to the receptacles, then "the outlet would then cause the circuit breaker to cut off power and numerous other cells would lose power to their outlets in addition to 1200-79." (*Id*.). There is no evidence in the record that other cells lost power. Further, although Plaintiff testified that the smoke

-11-

from the outlet caused him throat irritation (ECF No. 35-3, PageID.230), Plaintiff also testified that he did not seek medical care for any purported injury relating to his alleged lack of power or inoperative electrical outlet because the circumstances were not "debilitating" but merely "aggravating."  (ECF No. 35-3, PageID.230-31).

The Court has held that "absent some indication of harm," i.e., deprivation of "essential food, medical care, or sanitation," placement in a cell without power for three months—thrice the amount of time that Plaintiff is alleging that he lived without power here— "was at most an inconvenience and, therefore, does not rise to the level of an Eighth Amendment violation." *Thomas v. Michigan Dep't of Corr.*, No. 2:23-CV-191, 2024 WL 1046350 at *6 (W.D. Mich. Mar. 11, 2024).  Defendants have presented sufficient evidence that Plaintiff was not deprived of "essential food, medical care, or sanitation," and Plaintiff has not responded with evidence to the contrary.  *Id.*

As noted above, Plaintiff must present "significant probative evidence" establishing that "there is a genuine issue for trial."  *Pack*, 434 F.3d at 813-14. Plaintiff has failed to present evidence creating a genuine issue for trial.  Thus, Defendants have satisfied their burden to demonstrate the absence of genuine factual dispute.  Accordingly, Defendants are entitled to summary judgment on Plaintiff's conditions-of-confinement claim.[1]

---

[1] Because the undersigned concludes that no constitutional violation occurred, there is no need to address whether the law was clearly established regarding qualified immunity.  *See Martin* 712 F.3d at 957; *see also Pearson*, 555 U.S. at 232.

## **CONCLUSION**

For the reasons articulated herein, Defendants' Motion for Summary Judgment (ECF No. 34) is hereby granted and this action terminated.  For the same reasons the undersigned grants Defendants' motion, the undersigned finds that an appeal of this matter by Plaintiff would not be in good faith.  An Order consistent with this Opinion will enter.

                                                          Respectfully submitted,

Dated: February 3, 2026                           /s/ Phillip J. Green
                                                        PHILLIP J. GREEN
                                                        United States Magistrate Judge